Marion ALDRIDGE, Appellant,

v.

Robert A. McDONALD, Secretary of
Veterans Affairs, Appellee.

No. 14–3656.

United States Court of Appeals
for Veterans Claims.

Aug. 7, 2015.

Before LANCE, DAVIS, and
GREENBERG, Judges.

**ORDER**

PER CURIAM:

On October 27, 2014, United States Marine Corps veteran Marion Aldridge submitted to the Court a Notice of Appeal (NOA) from a December 24, 2013, Board of Veterans' Appeals (Board) decision. To be timely, the NOA should have been filed by April 23, 2014. *See* 38 U.S.C. § 7266(a) (providing that a person adversely affected by a Board decision who wishes to appeal "shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed"). The Secretary moved to dismiss the appeal because it was not timely filed and the Court ordered Mr. Aldridge to explain why the appeal should not be dismissed.

In response to the Court's order, Mr. Aldridge states that the time to appeal the

Board's decision should be equitably tolled in light of the deaths of his mother, sister, and unborn granddaughter, all of which occurred during a nine-month period. Mr. Aldridge contends that the combined effect of these deaths led to a deep depression that caused him to experience difficulty processing dates and times and that he did not understand that he had only until April 23, 2014, to file his NOA. Mr. Aldridge contends that the depression, combined with his singular focus on the well being of his family, either directly or indirectly caused his appeal to have been filed late.

■ The 120–day period to appeal a Board decision to the Court is not jurisdictional and therefore may be excused under the doctrine of equitable tolling. *Henderson v. Shinseki*, 562 U.S. 428, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations." *Lozano v. Montoya Alvarez*, —— U.S. ——, 134 S.Ct. 1224, 1231, 188 L.Ed.2d 200 (2014). The Supreme Court has determined that equitable tolling is appropriate when an appellant demonstrates " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)); *Checo v. Shinseki*, 748 F.3d 1373, 1378 (Fed.Cir. 2014) (proponent of equitable tolling must show (1) an extraordinary circumstance, (2) due diligence, and (3) causation) (*citing McCreary v. Nicholson*, 19 Vet.App. 324 (2005), *adhered to on reconsideration*, 20 Vet.App. 86 (2006)), *reversing in part and dismissing in part*, 26 Vet.App. 130 (2013); *see also Toomer v. McDonald*, 783 F.3d 1229 (Fed.Cir.2015). Whether a situation justifies equitable tolling is a matter as-sessed by the Court on a case-by-case basis with an acknowledgment of the "need for flexibility" and "for avoiding mechanical rules." *Toomer*, 783 F.3d at 1239 (citing *Holland*, 560 U.S. at 649, 130 S.Ct. 2549); *Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed.Cir.2013) (noting that equitable tolling is not "limited to a small and closed set of factual patterns").

■ Although sympathetic to Mr. Aldridge's claim, the Court finds that he has not demonstrated that equitable tolling is warranted. Mr. Aldridge contends that his family members' deaths caused a depression so great that he lost sense of time and had difficulty carrying out even routine tasks. However, Mr. Aldridge also states that, during the same period, he closed the estates of his deceased mother and sister, became his elderly father's primary caregiver, maintained his job as a desk clerk at a VA hospital, and attempted to hire a law firm to represent him in his appeal before the Court. Given these facts, the Court is unconvinced that Mr. Aldridge's depression rendered him incapable of handling his affairs or otherwise directly or indirectly prevented his appeal from being timely filed. *See Holland*, 560 U.S. at 649, 130 S.Ct. 2549; *see also Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir.2004) (applying equitable tolling when appellant suffered a mental illness that rendered him incapable of handling his own affairs). Furthermore, although the deaths of his family members were distressing and their aftermath required a great deal of attention, Mr. Aldridge also has failed to demonstrate that the deaths themselves directly or indirectly affected the timely filing of his appeal. *See Holland*, 560 U.S. at 649, 130 S.Ct. 2549. Because Mr. Aldridge has not demonstrated facts sufficient to justify equitable tolling, the Court will dismiss his appeal. *See Checo*, 26 Vet.App. at 133 (the appellant

bears "the burden of demonstrating that equitable tolling is warranted").

Again, the Court acknowledges the regrettable and sympathetic circumstances that burdened Mr. Aldridge. However, the Court is required to apply the doctrine of equitable tolling in accordance with the governing body of law. *See Sneed,* 737 F.3d at 726 (reversing this Court's determination that attorney abandonment does not warrant equitable tolling because the Court's overly narrow determination conflicted with Federal Circuit and Supreme Court precedent). In that regard, the dissent—good intentions aside—provides no support in the jurisprudence of either this Court, the U.S. Court of Appeals for the Federal Circuit, or the Supreme Court that would counsel the application of equitable tolling to the facts of this case as they have been presented. *See Bethea v. Derwinski,* 2 Vet.App. 252, 254 (1992) (decisions of the Court are bound by precedent, which includes an "en banc decision of this Court, a decision of the United States Court of Appeals for the Federal Circuit ..., or a decision of the Supreme Court of the United States"). Although the dissent would have " 'justice be done whatever be the consequences,' " *Post* at 396 (quoting *Somerset v. Stewart,* (1772) 98 Eng. Rep. 499 (K.B.) 509 (Lord Mansfield)), the Court may not issue a decision that conflicts with established precedent, *Bethea,* 2 Vet.App. at 254, and moreover, is unwilling to accept the potential for the inequitable administration of justice to the parties who appear before it in exchange for ad hoc decisionmaking not grounded in the law.

Mr. Aldridge also asserts that the Court should address whether the three-part test for extraordinary circumstances set out in *McCreary* conflicts with the test articulated by the Supreme Court in *Holland.* According to Mr. Aldridge, the *Holland* test is more flexible than the *McCreary* test because *McCreary* holds that an untimely filing must be the direct result of an extraordinary circumstance, whereas *Holland* requires only that the extraordinary circumstance "stood in [the appellant's] way and prevented timely filing." 560 U.S. at 649, 130 S.Ct. 2549. However, because the Court finds that Mr. Aldridge's circumstances neither directly nor indirectly prevented the timely filing of his appeal, the facts of this case do not raise Mr. Aldridge's perceived distinction between *McCreary* and *Holland.* Accordingly, the Court will not address this issue further. *See Waterhouse v. Principi,* 3 Vet.App. 473, 474 (1992) (holding that the Court does not issue advisory opinions); *see also Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace,* 288 U.S. 249, 262, 53 S.Ct. 345, 77 L.Ed. 730 (1933) (an advisory opinion is "an abstract determination by the Court of the validity of a statute ... or a decision advising what the law would be on an uncertain or hypothetical state of facts.").

On consideration of the foregoing, it is

ORDERED that the Secretary's motion to dismiss is granted and this appeal is DISMISSED.

GREENBERG, Judge, dissenting:

I dissent and contend that the Court should exercise its equitable power to toll the appeal period and accept the appellant's appeal in light of his testimony.

The appellant in this case alleges that the deaths of three family members in four months, and his overwhelming grief, prevented him from filing his appeal within the statutory 120–day appeal period. Specifically, on September 27, 2013, the appellant's mother died. Appellant's Memo, Appendix (App.) at 13. On December 16, 2013, the appellant's granddaughter was born stillborn. Appellant's Memo, App. at

12. On December 24, 2013, the Board issued its decision on the appellant's claims. On January 14, 2014, the appellant's sister died. Appellant's Memo, App. at 14.

The appellant states that following his mother's death, he "became severely depressed" and "had difficulty carrying out tasks that had been routine before her death." Appellant's Memo, App. at 2–3. After his granddaughter died, "[his] depression deepened and [he] was overwhelmed with sadness." Appellant's Memo, App. at 3. At the time that he received the Board decision in this case, he was "in a depressive state" and "was unable to even consider next steps like noticing an appeal" or even to "think about [him]self or [his] disability benefits." Appellant's Memo, App. at 3. The death of the appellant's sister "exacerbated all of the grief [he] was already experiencing" and pushed him into a "dark period of depression" in which he "felt shut in a closet or trapped with [his] grief." Appellant's Memo, App. at 3–4.

The appellant alleges that, in his state of grief, he "singularly focused on the well-being of others in [his] family," "consum[ing himself] with handling the estates of [his] mother and sister, including paying bills and conferring with creditors"; "becom[ing his] 83[-]year[-]old father's primary caregiver," and "tried to support [his] daughter ... as she continues to recover from the loss of her child." Appellant's Memo, App. at 4–5. He states that he received mailings from law firms during January and February 2014 concerning potential representation during an appeal, and "[a]t some point during [his] depression" replied to one of these mailings. Appellant's Memo, App. at 5. Some time thereafter he was instructed to pay the Court's filing fee by an attorney at the firm, and on October 27, 2014, he did so,

only to then learn that the appeal period had passed and that the firm was unable to represent him. Appellant's Memo, App. at 6.

Historically, "[u]nder peculiar circumstances ... excusing or justifying [ ] delay, Courts of Equity [would] not refuse their aid in furtherance of the rights of the party." JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE AS ADMINISTERED IN ENGLAND AND AMERICA § 529 (6th ed. 1853); *see* 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *91 ("[W]here some collateral matter arises out of the general words, and happens to be unreasonable; there the judges are in decency to conclude that this consequence was not foreseen by the parliament, and therefore they are at liberty to expound the statute by equity."). This Court should apply equitable tolling when it aids a diligent appellant who was unable to file timely. *See* JOHN NORTON POMEROY, POMEROY'S EQUITY JURISPRUDENCE AND EQUITABLE REMEDIES, § 419 (3d ed. 1905) (" 'Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence.' " (quoting Lord Camden, *Smith v. Clay*, (1767) 27 Eng. Rep. 418 (Ch.) 420; Amb. 645, 647) (emphasis omitted)). Diligence should be measured in light of the Supreme Court's holding that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.' " *Holland v. Florida*, 560 U.S. 631, 653, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (citations and internal quotation marks omitted).

The appellant testifies in a written affidavit that in the aftermath of the deaths of his three family members, he had to manage the estates of his deceased mother and sister, become his elderly father's primary caregiver, and otherwise address the well-being of his remaining family members over his own needs, despite dealing with

extreme depression and grief. Appellant's Memo, App. at 3–5. He testifies that these circumstances prevented him from filing his appeal until his depression and grief had subsided, which was after the 120–day appeal period had ended. Addressing the inquiry as the sole factfinder, we should grant equitable tolling in light of the facts presented by the appellant. *See Bove v. Shinseki,* 25 Vet.App. 136, 143 (2011) (per curiam order) (the Court may "independently weigh the facts to determine if equitable tolling is appropriate" for the 120–day time limit for appeals); *see also* 38 U.S.C. § 7292(a) (the Federal Circuit's scope of review includes "a decision of the Court on a rule of law or of any statute or regulation ... or any interpretation thereof (*other than a determination as to a factual matter*") (emphasis added)). The majority emphasizes that the appellant was capable of handling complicated affairs during the period in question, but these responsibilities support his contention that he was prevented from filing because, in his grief, he focused solely on the needs of others to the exclusion of important matters in his own life. Appellant's Memo, App. at 3–5. His unsuccessful attempt to retain counsel for representation to this Court in the midst of his depression establishes his diligence during this period of depression and his inability to file timely despite that diligence. Appellant's Memo, App. at 5–6.

In *Hayburn's Case,* Chief Justice Jay wrote that the purposes of pension legislation were "exceedingly benevolent, and do real honor to the humanity and justice of Congress." 2 U.S. (2 Dall.) 409, 410, n., 1 L.Ed. 436 (1792). Writing for the Supreme Court in *Henderson v. Shinseki,* Justice Alito noted the "solicitude [for veterans] plainly reflected in the [Veterans Judicial Review Act]" and that the 120–day period was part of "legislation [that] was decidedly favorable to veterans." 562 U.S. 428, 440–41, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). Harsh application of a nonjurisdictional, though "important[,] procedural rule," *id.* at 441–42, 131 S.Ct. 1197 is inconsistent with the intent of Congress and ignores long-settled principles of courts' application of rules: "[P]rocedure may be made subsidiary, as it should be, to the substantial rights of the litigants," and "courts may avoid the snarls of procedural red tape and concentrate on the substantive questions at issue." *Winberry v. Salisbury,* 5 N.J. 240, 254, 74 A.2d 406, 413 (N.J.1950) (Vanderbilt, C.J.). "[F]iat justicia, ruat caelum, let justice be done whatever be the consequence." *Somerset v. Stewart,* (1772) 98 Eng. Rep. 499 (K.B.) 509 (Lord Mansfield). The appellant is before us testifying that the three deaths of family members, and his extreme ensuing grief and depression, prevented him from filing his appeal within the 120–day appeal period. I would grant equitable tolling on these undisputed facts.